IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior District Judge Richard P. Matsch

Civil Action No. 05-cv-02057-RPM

DAVID REED GRIMES, and
KATHERINE L. GRIMES,

    Plaintiffs,

v.

WELLS FARGO INSURANCE, INC. f/k/a NORWEST INSURANCE, INC.,

    Defendant.

---

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

---

    The plaintiffs David Reed Grimes ("Reed Grimes") and Katherine L. Grimes filed a complaint seeking damages against the defendant Wells Fargo Insurance, Inc. ("Wells Fargo"), acting as a broker or agent for Hartford Fire Insurance Company ("Hartford"). The plaintiffs alleged that Wells Fargo, and its predecessors Norwest Insurance, Inc. and the Goodson Insurance Agencies (collectively "Wells Fargo"), failed to properly apply for and have issued a Hartford automobile insurance policy which provided underinsured motorist ("UIM") coverage for Reed Grimes when he was injured by an automobile. The plaintiffs claimed that Wells Fargo was negligent and breached fiduciary duties to them.

    Wells Fargo moved for summary judgment of dismissal of the plaintiffs' claims on the basis that no legal duty is owed to them or, in the alternative, for a determination that the applicable Hartford policy is subject to limits of $500,000 as to UIM coverage. Although Hartford was initially also named as a defendant, it was dismissed with prejudice by Order dated

February 9, 2006, upon stipulation filed by the plaintiffs and Hartford.

On January 21, 2001, Reed Grimes was injured when he was hit by a car while he was in a restaurant. Reed Grimes and his wife, plaintiff Katherine Grimes, sued the tortfeasors and recovered the limits of the tortfeasors' automobile insurance policy. Reed Grimes thereafter sought UIM coverage from a commercial automobile insurance policy issued by Hartford, policy number 34 UEC EX7346, in effect for the policy period from April 1, 2000 to April 1, 2001, with UIM limits of $500,000 for each accident.

The named insureds under the Hartford policy were "Blue Spruce Investment Corp & G.F. Gaming DBA The Famous Bonanza & Grimes LLC DBA The Lucky Strike at Petes Place Ann & Ed Dodson." The Hartford policy also listed the cars owned by G.F. Gaming that were covered. UIM coverage was afforded as follows:

> **A.  Coverage**
>
> 1. We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "uninsured motor vehicle". . . .
>
>                 \* \* \*
>
> **B.  Who is An Insured**
>
> 1. You.
>
> 2. If you are an individual, any "family member".
>
> 3. Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto". . . .
>
> 4. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

Hartford denied UIM coverage because Reed Grimes was not a named insured under that policy and was not "occupying" a covered "auto" at the time of the accident. The plaintiffs claimed that Wells Fargo had a duty to recommend and apply for an automobile policy which adequately and fully covered them for UIM benefits, in limits of more than $500,000.

Grant Goodson ("Goodson") was an insurance agent who worked for Wells Fargo. Ross Grimes and Ann Dodson, the father and sister of Reed Grimes, respectively, met with Goodson to obtain insurance coverage for two companies, Blue Spruce Investment Corp. and G.F. Gaming ("Gaming") (collectively, the "companies"). Gaming ran casinos and Blue Spruce owned the real property on which the casinos were located. At relevant times, Gaming's shareholders were members of the Grimes family, namely, Ross and Nancy Grimes, and their adult children Ann Dodson, Sue Hentschel, and Reed Grimes.

Goodson was recommended to Ross Grimes by a friend. Ross Grimes was Gaming's CEO and Ann Dodson was Gaming's general manager. When Reed Grimes walked in during the first meeting Ross Grimes and Ann Dodson had with Goodson, he was briefly introduced to Goodson as Ross Grimes' son and an owner of Gaming. At that time, Reed Grimes was not married to Katherine Grimes. Reed Grimes never met with Goodson again and thereafter only saw him in passing in the casinos. He never spoke to Goodson about insurance coverage and it was his understanding that Goodson was an insurance agent for Gaming.

Gaming was seeking insurance for "everything." At the first meeting, Ross Grimes "told him [Goodson] about who we were, told him about the family, told him about everybody," and that he wanted Goodson to "cover us completely." Gaming had adopted a car purchase policy where Gaming purchased the cars as people were on call and Ann Dodson was looking for

3

insurance for company cars that were driven by family members.

Ross Grimes and Ann Dodson had a second meeting with Goodson when he came back with a proposal and recommended various coverages. Goodson asked general business questions during the first meetings. Ann Dodson did not recall if there were automobile questions during those first meetings, but probably in 1992 or 1993, she provided information about the cars to be insured and their drivers. She assumed that because Wells Fargo "asked for a list of drivers and we gave them a list of drivers, that we were all insured." She also assumed that they were all named insureds and that they were all covered.

Although Ann Dodson received insurance proposals every year prior to the renewal of the Hartford policy, she only read the premium. She received copies of the policies every year but neither she nor anyone else on behalf of the companies read them. In April 2000, Ann Dodson was responsible for reviewing the renewal proposal and making sure it was correct. She was the contact person. In 2000, she believed the automobile insurance coverage was $500,000 for uninsured/underinsured motorist. Reed Grimes does not recall ever speaking with Ann Dodson or Ross Grimes about getting auto insurance for the shareholders or officers. He had never seen any of the policies prior to his accident. He testified: "We had company cars. I assumed they had insurance."

Katherine Grimes met Goodson in May of 1995, when she started working for Gaming. Goodson introduced himself as the agent handling insurance for Gaming. Katherine Grimes married Reed Grimes in September 1995. She has never been an officer, shareholder or director of Gaming or Blue Spruce. Prior to 2001, she never had any discussions about auto insurance with Ross Grimes or Ann Dodson or requested any particular coverage. She just accepted what

4

they provided.

The Colorado Court of Appeals recently stated:

> Colorado follows the general rule that insurance agents have a duty to act with reasonable care toward their insureds, but, absent a special relationship between the insured and insurer's agent, that agent has no affirmative duty to advise or warn his or her customer of provisions contained in an insurance policy. . . . No duty to give advice is created simply because the insurance intermediary becomes a person's agent. This applies both to advice about what policies should be purchased as well as advice about what coverage is contained in an insured's existing policy. . . . Insurance agents or brokers are not personal financial counselors and risk managers, approaching guarantor status, and it is well settled that agents have no continuing duty to advise, guide, or direct a client to obtain additional coverage.
>
> * * *
>
> Whether a special relationship has been formed turns on whether there is "entrustment," that is, whether the agent or broker assumes additional responsibilities beyond those which attach to the ordinary, reasonable agent possessing normal competencies and skills.

*Kaercher v. Sater,* ___ P.3d ___, 2006 WL 1766846 *3 (Colo.App. 2006). *See also Estate of Hill v. Allstate Ins. Co.,* 354 F.Supp.2d 1192, 1196-1198 (D.Colo. 2004).

Under the facts and circumstances of this case, Wells Fargo owed no duty to the plaintiffs individually to obtain personal insurance on their behalf. No special relationship existed between Wells Fargo and the plaintiffs, and Wells Fargo owed no duty to advise about or procure UIM insurance coverage for the plaintiffs. The plaintiffs have cited no controlling Colorado law that would support such duties. Therefore, it is

ORDERED that the defendant Wells Fargo Insurance, Inc.'s Motion for Summary Judgment [Doc.#30] is granted and the plaintiffs' complaint and claims are dismissed. The Clerk will enter judgment for the defendant Wells Fargo Insurance, Inc., dismissing this civil action and awarding the defendant Wells Fargo Insurance, Inc. its statutory costs.

DATED: December 11th , 2006.

BY THE COURT:

s/Richard P. Matsch

_____
Richard P. Matsch, Senior District Judge